IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MARY L. MCINTOSH

VS.                                               CIVIL ACTION NO. 2:07cv303-KS-MTP

MICHAEL J. ASTRUE,
Commissioner of Social Security

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION AFFIRMING THE DECISION OF THE COMMISSIONER, ETC.

This cause is before the Court on Motion for Order Affirming the Decision of the Commissioner [18] filed by Defendant and Motion for Judgment on the Pleadings [14] filed by the Plaintiff and the Court considering same and also considering the Report and Recommendation filed herein on January 15, 2009 [23] by United States Magistrate Judge Michael T. Parker, does hereby find as follows, to-wit:

1. PROCEDURAL HISTORY

On June 15, 2005, McIntosh applied for supplemental security income benefits (SSI) and disability benefits under the Social Security Act.[1] (Tr. 23.) Her claims were denied initially on August 11, 2005, and upon reconsideration on October 5, 2005. (Tr. 23.)

Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and said hearing was convened before ALJ Wallace Weakley. McIntosh, who was represented by counsel at the hearing, appeared and testified, as did Mr. Ronnie Smith, a vocational expert (VE). (Tr. 275.)

---

[1]McIntosh had previously filed applications for disability and SSI benefits on September 15, 2003. These applications were denied on April 29, 2005. (Tr. 23, n. 1.)

Employing the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f),[2] on March 29, 2007, the ALJ rendered his decision that McIntosh was not disabled within the meaning of the Social Security Act. (Tr. 23-31.) McIntosh then requested review by the Appeals Council. However, the Appeals Council found no basis for changing the decision of the ALJ and denied McIntosh's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 5-7.)

Aggrieved by the Commissioner's decision to deny benefits, McIntosh filed a complaint in this court on November 13, 2007, seeking an order reversing the Commissioner's final decision, an award of benefits, or other alternative relief. Complaint [1]. The Commissioner answered [10] the complaint denying that McIntosh is entitled to any relief. The parties having filed dispositive motions pursuant to the Local Standing Order in Social Security Cases, the matter is now ripe for decision.

**Medical/Factual History**

The plaintiff was fifty-three years old as of the date of the hearing and had finished the twelfth grade. (Tr. 283-84.) Her past work history includes jobs as a poultry vaccinator, laundry worker, seamstress and janitor. She alleges that she is disabled by back pain from degenerative disc disease in her cervical and lumbar spine and depression. Pl.'s Br.[15] at 3.

Plaintiff initially alleged disability onset as of March 2001. However, the onset date was

---

[2] The five steps focus on:
   1) whether the claimant is engaged in substantial gainful activity,
   2) whether the claimant has a severe impairment,
   3) whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1;
   4) whether the claimant can return to prior relevant work, and
   5) whether there is any work that exists in significant numbers in the national economy that the claimant can perform.

amended at the hearing to April 30, 2005, the day after her first claim for benefits was denied. (Tr. 279.)

The records reflect that McIntosh consulted with or was examined by various medical professionals for various maladies in late 1997 and in 1998.[3] In May of 1998, plaintiff was treated at the emergency room of the Covington County Hospital for neck pain resulting from a motor vehicle accident. Following radiological tests which proved normal, plaintiff was diagnosed with cellulitis of the neck with a laceration and prescribed pain medications. (Tr.191-92, 207.)

No further treatment is documented in the records for a period of years until October 15, 2004, when plaintiff saw Word Johnston, M.D. complaining of heart flutters, a choking sensation and constipation. She was prescribed iron tablets and potassium and a follow-up appointment was scheduled. (Tr. 183-84.) The record reflects several follow-up visits for testing and treatment for heart palpitations and anemia in November and December of 2004. (Tr. 175-79.)

On March 3, 2005, McIntosh saw Word Johnston, M.D. for "generalized aches and pains," primarily in the joints. He prescribed Mobic and ordered an arthritis profile. (Tr. 171.) On March 14, 2005, McIntosh reported that her chest hurt and that the Mobic did not provide much help. Dr. Johnston's notes reflect that the rheumatological work-up did not find anything and, therefore, he intended to refer plaintiff to Dr. Folse. (Tr. 169.) On March 21, 2005, Dr. Johnston reported that plaintiff continued to report generalized aches and pains but that her vital sings looked okay. He prescribed Zanaflex for symptomatic relief and referred plaintiff to an

---

[3]She was treated at various times in 1998 for chest pain, nervousness, problems with a cyst, sore throat, menstrual problems, depression, and body aches by Linda Buffington, FNP and Joseph Johnston, M.D. (Tr. 186-94.)

3

appointment with Dr. Folse on April 11. (Tr. 167.)

Dr. Y. Susi Folse of Southern Bone & Joint Specialists, P. A. examined plaintiff on April 11, 2005. Plaintiff was noted to be "generally healthy," "well-nourished," and in no acute distress. Plaintiff's back exam showed normal posture, range of motion normal in all directions, and no significant lower extremity weakness or sensory changes. Straight leg raising was negative bilaterally and hip rotation was negative. (Tr. 214.)

Plaintiff's neck exam showed a "slightly limited" range of motion to the left and right, moderate spasm of the cervical musculature, some left arm radicular symptoms, and a normal range of shoulder motion. There was tenderness noted between the scapulas and the back of the neck near the C-7 prominence. Lumbar spine images were "normal study" with no significant fracture, decrease in joint space or listhesis noted. (Tr. 214.)

Dr. Folse diagnosed plaintiff with joint and bone pain, cervicalgia and myofascial pain syndrome. The treatment and testing recommendations included a bone density study, MRI of the L-spine and C-spine, and EMG/NCS of the left arm and right leg. (Tr. 214.)

On May 16, 2005, McIntosh had a follow-up visit with Dr. Folse. Plaintiff was again described as generally healthy, well-nourished and in no acute distress. Plaintiff continued to complain of lower back pain and neck pain and numbness and tingling in her left arm and right leg. An MRI of plaintiff revealed a bulge and spur with degenerative disk disease ("DDD") at C5-6 in her neck and some bulge and DDD with some facet changes at L5-S1 in her back. In addition to prescribing medications for spasms, Dr. Folse recommended physical therapy and LESI at L5-S1 (epidural injections) and possibly for C5-6. A follow-up appointment was scheduled for six weeks. (Tr. 209.)

Notes from plaintiff's June 27, 2005 follow-up appointment with Dr. Folse indicate the

4

study on her leg was normal, but her arms showed some "chronic radic changes." Plaintiff was again noted as generally healthy, well-nourished and in no acute distress. Dr. Folse again recommended ESI's (epidural steroid injections) which plaintiff stated she could not afford. She was administered a celestone shot and was to continue on muscle relaxants and pain medications. (Tr. 208.)

Within the same time period that plaintiff saw Dr. Folse, she continued to see Dr. Word Johnston. On May 18, 2005, Dr. Johnston's notes reflect that plaintiff had not filled the Zanaflex prescription. He encouraged her to take the medication to see if it would help and to complete the tests ordered by Dr. Folse "so that we can try to get a handle on exactly what the problem is." (Tr. 165.)

On May 25, 2005, plaintiff returned to Dr. Johnston for problems with constipation. He noted that she was "stressed out and depressed over her situation" and he started her on Zoloft. (Tr. 163.) At a follow-up visit three weeks later, he noted that plaintiff was still having back and joint problems and hoped to have some information about her medical problems after Dr. Folse completed testing. As for the depression, Dr. Johnston noted that plaintiff had "gotten a lot better," that plaintiff had stated that the Zoloft has helped a lot and that she is sleeping better. (Tr. 161.)

On July 29, 2005, Carol E. Kossman, M.D. completed the physical residual functional capacity assessment. She found that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could sit (with normal breaks) about six hours a day and stand and/or walk (with normal breaks) about six hours a day. Except for occasional postural limitations (climbing, balancing, stooping, kneeling, etc.), Dr. Kossman found no other limitations. She concluded that plaintiff was precluded only from heavy work or work involving frequent postural activities. (Tr.

5

218-25.)

Angela O. Herzog, Ph.D. conducted the psychiatric review on August 9, 2005. She found no severe impairment and only mild functional limitations. (Tr. 226, 236, 238.)

Plaintiff saw Dr. Word Johnston on July 8, 2005. She reported to Dr. Johnston that Dr. Folse had diagnosed her with a ruptured disc and was trying to get her some type of help with arthritis, but Dr. Johnston did not know what this was. Dr. Johnston observed that he did not know whether plaintiff was going back to work, that her symptoms are subjective and "most of this is based on the report of the patient." (Tr. 266.)

On September 30, 2005, plaintiff visited Dr. Word Johnston again, this time complaining of three separate problems. Two of the problems were unrelated to the present disability claim (high blood pressure and hot flashes). The third problem was neck and back pain. Dr. Johnston noted that he did not have Dr. Folse's reports on her situation, but would get them. (Tr. 264.)

Having reviewed some of Dr. Folse' records, Dr. Johnston saw plaintiff again on October 28, 2005. He told plaintiff he did not know of anything else he could do for her, but did prescribe pain medications to bring the pain under control. (Tr. 262.) On a follow-up visit in December 2005, Dr. Johnston continued plaintiff on Mobic to deal with her back/neck issues. (Tr. 260.)

In April, August, and September 2006, plaintiff had follow-up visits with Dr. Johnston. (Tr. 258, 253, 249.) He continued her on pain medications after each visit. In his notes from the August 2006 examination, Dr. Johnston reported that an arthritis profile on plaintiff "was basically all normal." (Tr. 253.)

In plaintiff's final documented visit with Dr. Johnston on October 26, 2006, plaintiff complained of generalized pain. Dr. Johnston continued her medications and noted that he was "beginning to think that maybe she has some Fibromyalgia also." (Tr. 246.)

At the hearing held on January 9, 2007, the ALJ held the record open for fifteen days as plaintiff was awaiting a completed questionnaire from Dr. Johnston. (Tr. 312. ) The questionnaire was duly submitted and made a part of the record. In his responses to the questionnaire, Dr. Johnston indicated *inter alia* that plaintiff had severe pain in all parts of her body, would need unscheduled breaks during the workday, had significant limitations doing repetitive activities, would miss work at least four times per month, and would need to lie down or rest at unpredictable intervals during a workday. Under "prognosis," he noted that the extent of plaintiff's problem is unknown. 269-71.)

## 2. STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames,* 707 F.2d at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.

## 3. PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATIONS AND ANALYSIS THEREOF

Preliminarily Plaintiff makes a statement in her Objections regarding the medical evidence that is before the Court. She points there that are seven medical exhibits: four exhibits from treating sources, Dr. Word Johnson, M.D. and Dr. Susi Folse, covering a ten year period from 1997 to January of 2007. She also points out that there are three exhibits from non-treating, non-examining sources from Disability Determination Services covering a short period during July/August 2005. This case has gone on over a long period of time and there is much medical evidence before the Court.

Dr. Word Johnson is a treating physician and Plaintiff's argument is that his post hearing Medical Source Statement dated January 11, 2007, should be controlling for the Court. Plaintiff also argues that the Administrative Law Judge, by inference, rejected the reviewing physicians reports when he did not mention them in his ruling. In Issue No. 1 at page 11 of the Report and Recommendation of the Magistrate Judge, the issue of proper weight to the opinion of the treating physician is addressed. It should be noted that Dr. Johnson's post hearing Medical Source Statement is not supported by the ongoing medical documentation including much from his prior reports. The opinion from a treating physician on the ultimate issue of disability is not controlling unless it is both medically well-supported and not inconsistent with other substantial evidence in the record. Needless to say, there is substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2007. The inconsistencies in Dr. Johnson's Medical Source Statement were also identified when compared to the records of Dr. Folse and the psychological records of Dr. Herzog.

**ISSUE NO. 1: The Administrative Law Judge was required to give the opinion of the**

**treating physician controlling weight or was required to recontact the treating physician.**

Plaintiff urges that the Administrative Law Judge was required to give the opinion of Dr. Word Johnson controlling weight. It is true that Dr. Johnson's records go back ten (10) years and that he has seen Plaintiff more than any other physician. Throughout that time he has ordered numerous medical and laboratory tests and x-rays and has referred Plaintiff to Dr. Susi Folse.

In his opinion, the Administrative Law Judge found that the other available medical evidence simply does not support Dr. Johnson's opinions that are reflected in the questionnaire (Medical Source Statement). The examinations of Dr. Folse also contradict the Medical Source Statement from January of 2007. Additionally, the Administrative Law Judge found that Plaintiff's testimony was not entirely credible and that her limitations on her activities appear to be self-imposed. (Tr. 28.) This Court finds that substantial evidence supports the Administrative Law Judge's decision to discount the questionnaire completed by Dr. Johnson and that this Objection to the Report and Recommendation lacks merit in that there in substantial evidence to support the finding of the Administrative Law Judge.

**ISSUE NO. 2: Plaintiff argues that the Administrative Law Judge should have recontacted Dr. Johnson because the evidence received was inadequate to determine whether the claimant is disabled.**

The Fifth Circuit has held that the Administrative Law Judge must seek clarification or additional evidence from the treating physicians only when the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight *and,* where there exists no other medical opinion/evidence based on personal examination or treatment of the claimant. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The Administrative Law Judge went through the evidence as stated in his opinion and found that there was adequate

9

evidence for him to render a decision. As noted above, much of the evidence came from Dr. Johnson's files and his reports. Remand is appropriate only if doubt is cast as to whether substantial evidence is in the record to support the Administrative Law Judge's decision. *Morris v. Brown*, 864 F.2d 333, 335 (5th Cir. 1998). As stated above, there is a large volume of evidence which was addressed by the Administrative Law Judge in his ruling and this Court finds that substantial evidence justifies his declining to remand the case for additional evaluation.

**ISSUE NO. 3: That the ALJ incorrectly assessed claimant's residual functional capacity.**

The Administrative Law Judge relied in his opinion on the testimony of a vocational expert. The hypothetical spelled out by the vocational expert set forth Plaintiff's non-exertion limitations in a detailed fashion and Plaintiff's attorney was given the opportunity to cross-examine him (Tr. 310-311). In his Report and Recommendation, the Magistrate Judge addressed this issue and found that reliance on expert testimony is permitted. This is what the Administrative Law Judge, in fact, did. It is not up to this Court to reweigh the evidence, but to determine whether or not there is substantial evidence in the record supporting the Administrative Law Judge's decision. Clearly there is, and this Court finds that because of such, Plaintiff's Objection lacks merit.

**CONCLUSION**

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the Objections. For the reasons set forth above, the Court concludes that McIntosh's Objections lack merit and should be overruled. The Court further concludes that the proposed recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves and

adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendations.

Accordingly, this Court finds that the Commissioner's decision, that McIntosh is not entitled to disability benefits under the Social Security Act is supported by substantial evidence and that it uses the correct legal standards. Therefore, the Commissioner's Motion to Affirm [18] is granted and the denial of benefits is affirmed. The Court further finds that McIntosh's Motion for Judgment on the Pleadings [14] should be denied.

IT IS, THEREFORE, ORDERED that Judgment is granted for the Commissioner on the pleadings and the complaint is dismissed.

SO ORDERED on this, the 10th day of April, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE